IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | 8:17-CR-466 |
| vs. | ) | (Judge Grimm) |
| | ) | |
| STEPHAINE TWYMAN and | ) | |
| DEVELL LINCOLN, | ) | |
| Defendants. | ) | |
| | ) | |

### MS. TWYMAN'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR MODIFICATION OF CERTAIN CONDITIONS OF RELEASE

Defendant Stephanie Twyman, by and through her newly-appointed counsel, moves this Court to modify her conditions of pretrial release. Specifically, Ms. Twyman requests that the Court remove conditions that prevent her from having any contact with four of the eight people the Government has forbidden her from contacting: her sister, Ms. Stacey Twyman, her children's father, Mr. Larry Williams, and her close family friends, Ms. Courtney Phillips and Ms. Capri Taylor.

When asked for its position, the Government indicated it would consent to a modification that permits Ms. Twyman to have contact with Mr. Williams, "so long as she is still not permitted to speak with him about the case or anything else related to the [alleged] conspiracy." The Government said that it would not consent to modifications related to Ms. Stacey Twyman, Ms. Phillips, or Ms. Taylor. While Ms. Twyman's preference is to simply be permitted to be in contact with Mr. Williams, fully understanding that she cannot engage in conversations that would constitute an obstruction of justice, Ms. Twyman would accept the Government's offer to modify the conditions with respect to Mr. Williams, so long as only "substantive" conversations

are forbidden. Otherwise, the Government could claim that she violated her conditions if she were to even mention to Mr. Williams her need to meet with her attorneys to discuss the case. Given Ms. Twyman's close personal relationships with the other three individuals, she would ask for, at a minimum, similar modifications with respect to the them.

The restrictions preventing Ms. Twyman from contacting these four individuals[1] impose unnecessary hardships on her. As discussed below, these restrictions are not authorized by the Bail Reform Act of 1984 and infringe on Ms. Twyman's Fifth and Eighth Amendment rights.

## BACKGROUND

On September 9, 2017, the Government filed an indictment against Devell Lincoln, in which it charged Mr. Lincoln with three counts of theft of public money. The Government filed a Superseding Indictment on March 28, 2018, in which it, for the first time, named Ms. Twyman as a Defendant in addition to Mr. Lincoln. It also added charges of aggravated identity theft and conspiracy to commit theft of public money. Ms. Twyman has been charged with conspiracy to commit theft of public money, theft of public money, and aggravated identity theft.

On May 2, 2018, Ms. Twyman voluntarily surrendered to the Government and made her first appearance before this Court. The Court ordered Ms. Twyman be released, subject to certain conditions. The government wanted Ms. Twyman to be ordered "to avoid all contact with persons who may become victims or witnesses" but they did not have the list of people at the time of Ms. Twyman's appearance. Transcript, Exhibit 1, at 8:17-23. Based on the government's request, the Court ordered Ms. Twyman to "avoid all contact, directly or indirectly, with any person who is or may become a victim or potential witness in the investigation or prosecution, including but not limited to: any co-defendant / List submitted by

---

[1] Since the Court has not had an opportunity to rule on the Government's willingness to modify the conditions with respect to Mr. Williams, this motion will address all four individuals.

the Government." Order Setting Conditions of Release 2, ECF No.18. Ms. Twyman's prior counsel did not have an opportunity to challenge or question the list in court because the government did not email the list until after her appearance. The listed individuals are: Devell Lincoln, Stacey Twyman, Larry Williams, Larvetta Tyree, Rosa Cruz, Krystal Proctor, Capri Taylor, and Courtney Phillips. The Government's message concluded, "We will advise if the Government determines that additional names ought to be added." Email from Michael Packard, AUSA, to Stuart Berman, Counsel for Ms. Twyman (May 2, 2018), Exhibit 2. The Government has not provided any specific, individualized justification for the people on its list.

## ARGUMENT

In its current form, the no-contact order violates the Bail Reform Act of 1984 and infringes on Ms. Twyman's Fifth Amendment right to due process, and her Eighth Amendment right against excessive bail. For these reasons she is entitled to a modification of her current conditions of release.

I. THE SWEEPING NO-CONTACT ORDER IS NOT AUTHORIZED BY THE BAIL REFORM ACT.

Because the current no-contact order is neither necessary to assure Ms. Twyman's appearance in court nor to ensure the safety of the community and because it is not the least restrictive option available to the Court, the order must be modified to comply with the Bail Reform Act of 1984.

   A. *The no-contact order is not related to Ms. Twyman's future appearances in court and does not improve community safety.*

When granting conditional release, the court may impose only the "least restrictive further condition, or combination of conditions, that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C.

§ 3142(c)(1)(B). The Bail Reform Act contains a list of potential conditions that *may* be placed upon a defendant during pre-trial release, including no-contact orders with alleged victims or potential testifying witnesses, but any conditions imposed must relate to ensuring the appearance of the defendant or community safety. Conditions placed for any other purpose are not authorized by the plain language of the law. *See United States v. Goossens*, 84 F.3d 697, 702-03 (4th Cir. 1996) (invalidating conditions of release designed to aid in a defendant's "ultimate rehabilitation" and not to "assure a defendant's appearance or to protect the public safety").

The current no-contact order as it pertains to Ms. Stacey Twyman, Mr. Larry Williams, Ms. Courtney Phillips, and Ms. Capri Taylor does not work to assure Ms. Twyman's appearance in court nor does it affect the safety of the community. As to Ms. Twyman's future court appearances, depriving her of the ability to contact close relatives and friends, especially those that reside in the community, only serves to weaken Ms. Twyman's own ties to the community. There is no serious argument that forbidding contact with a sibling, co-parent, or friends so close that they refer to each other as aunt and niece somehow makes one more likely to come to court.

Nor does the no-contact order improve community safety. The nature of the charges against Ms. Twyman indicate that she is not a threat to the community, and preventing her from contacting her family and friends does not make anyone safer. The charges pending against Ms. Twyman do not allege crimes against her community and involve an alleged theft from the IRS. Ms. Twyman has never committed a crime of violence or otherwise threatened the safety of her community. Her only prior convictions stem from non-violent conduct that occurred nearly twenty years ago.

Even expanding the definition of community safety beyond its natural meaning, the current no-contact order is still not designed to reasonably assure "the safety of any other person

4

and the community" because the relatives and friends Ms. Twyman wishes to contact do not appear to have any significant involvement with this case.  18 U.S.C. § 3142(c)(1)(B).  The superseding indictment filed on March 28, 2018, that names Ms. Twyman as a co-defendant to Devell Lincoln, also includes descriptions of two other individuals identified as Co-Conspirators A and B.  Neither of these co-conspirators are people whom Ms. Twyman seeks to have removed from her no-contact order.  Similarly, Ms. Twyman does not seek to have Devell Lincoln removed from the scope of the no-contact order.  She only asks that the Court grant relief as it relates to close relatives and friends who are neither named nor described in the charges filed against her.

> B.  *The no-contact order is not the least restrictive means of assuring Ms. Twyman's future appearances in court or improving community safety.*

Even if limiting contact with Ms. Twyman's close relatives and friends somehow made her more likely to appear in court or improved community safety, the law only allows for the "least restrictive" conditions necessary to be imposed.  18 U.S.C. § 3142(c)(1)(B).  While additional conditions may potentially advance the Bail Reform Act's permissible aims, they are nonetheless unauthorized if less-restrictive conditions of release reasonably assure compliance. *See United States v. Blauvelt*, No. 1:08-cr-269-GLR-1, 2008 WL 4755840 at *6 (D. Md. Oct. 28, 2008) ("The Bail [Reform] Act requires a reasonable assurance of the safety of the community, not a guarantee.")

By forbidding Ms. Twyman from having any interaction with certain relatives and close friends, including her sister and children's father, the Court has subjected Ms. Twyman to undue hardship.  These restrictions on her liberty and limits on her rights to speak and associate with whom she chooses are more than *de minimis*.  The burdens of being isolated from close relatives

and friends have placed Ms. Twyman under significant stress and have resulted in negative health consequences.

As a result of the order forbidding Ms. Twyman from communicating with her younger sister, Ms. Twyman is unable to support a sibling who is dealing with off and on homelessness. Were Ms. Twyman permitted to interact with her sister, she could fulfil what she sees as her duty as an older sibling and assist her sister by allowing her access to the home. Her sister could also help care for Ms. Twyman's children at home, making it easier for her to work, as required by her conditions of release.

Ms. Twyman and Mr. Larry Williams have two sons together, ages nine and thirteen. Forbidding Ms. Twyman from contacting their father harms the boys, as well as Ms. Twyman and Mr. Williams. Since being ordered to stay away from their father, Ms. Twyman has not been able to rely on Mr. Williams as a co-parent for the boys, who live with Ms. Twyman. This has created difficulties in obvious circumstances, such as arranging for Mr. Williams to see the children and requiring parent-teacher conferences to be held separately, but also with less obvious issues, such as how to get both parents' signatures on the release forms needed for the boys to play pee-wee football. Additionally, when Mr. Williams' mother—the boys' grandmother—a woman with whom Ms. Twyman had a close relationship, recently passed away, Ms. Twyman was unable to attend the funeral with the rest of her family.

Ms. Courtney Phillips and Ms. Capri Taylor are the daughters of one of Ms. Twyman's closest friends, and are themselves close, personal friends of Ms. Twyman. They refer to one another as auntie and niece. Both Ms. Phillips and Ms. Taylor lived with Ms. Twyman on and off while they were growing up, and Ms. Twyman has been involved with helping Ms. Phillips raise her children. The no-contact order has prevented Ms. Twyman from maintaining these

vital, personal relationships and caused her to miss events that are important to her, such as a joint birthday party the women typically share in August.

Whatever legitimate reason may exist for *limiting* Ms. Twyman's communications with these relatives and friends, no justification exists for *eliminating* them. By the mandatory terms of her release, Ms. Twyman has agreed to comply with federal, state, and local laws, and to appear at all future court dates. Additional conditions she is not presently challenging require her to regularly report to pretrial services, maintain or actively seek employment, reside at an address approved by pretrial services, and not move without authorization. Collectively these terms are more than enough to meet the aims of the Bail Reform Act. Should the Court feel that more is necessary, it could impose tailored restrictions on Ms. Twyman's contact with her relatives and friends without forbidding it outright. But whatever restrictions the Court may find necessary, it is clear a ban on all contact with these close relatives and friends goes beyond the least-restrictive means authorized by the Bail Reform Act.

II.  THE NO-CONTACT ORDER WAS IMPOSED WITHOUT CONSIDERATION OF MS. TWYMAN'S CIRCUMSTANCES AND CONSTITUTES EXCESSIVE BAIL VIOLATING HER FIFTH AND EIGHTH AMENDMENT RIGHTS.

The Court imposed the current no-contact order without making any findings that the order was a necessary condition of release based on any individualized consideration of Ms. Twyman or her case. No-contact orders as a condition of pretrial release are not necessarily violative of constitutional rights, but when they are automatically imposed without consideration of the individual characteristics of the defendant or the specific circumstances of the case, this amounts to a violation of the Fifth Amendment Due Process Clause and the Eighth Amendment Excessive Bail Clause. *See United States v. Arzberger*, 592 F. Supp. 2d 590, 604 (S.D.N.Y. 2008) ("[D]efendants are likely to be erroneously deprived of the First Amendment right of

association in the absence of an individualized determination of the need for a no-contact order."); *id.* at 605-06 ("Conditioning pretrial release on the relinquishment of constitutionally protected rights in circumstances where the conditions are not necessary to satisfy legitimate governmental purposes would constitute excessive bail in violation of the Eighth Amendment."); *see also United States v. Salerno*, 481 U.S. 739, 754 (1987) ("bail must be set by a court at a sum designed to ensure that goal, and no more").

The record in Ms. Twyman's case is completely devoid of anything that indicates the constitutionally-required, individualized determination was made before imposing the no-contact order. Ms. Twyman made her first appearance before the Court on May 2, 2018, and the no-contact order was imposed the same day. The order forbids contact with "any co-defendant" or anyone on the "[l]ist submitted by the Government"—a list the Court had not seen when entering its order—and a list the Government later emailed to Ms. Twyman's prior counsel, along with the disclaimer that the Government could *sua sponte* modify the order without any process should it "determine[] that additional names ought to be added."

The no-contact order was entered before the Government even proposed a list of individuals for the Court to consider. The Court did not make an individualized finding about the necessity of the no-contact order in this case and it could not have because it was unaware of whom it was forbidding Ms. Twyman from contacting. Exhibit 1. Beyond not evaluating the necessity of the individual provisions of the no-contact order, the Court did not provide a justification as to how the personal characteristics of Ms. Twyman or the circumstances of her case make *any* no-contact order necessary to reasonably ensure she appears in court and the community remains safe. This due process violation is not harmless.

## CONCLUSION

Imposing the sweeping no-contact order on Ms. Twyman went beyond what was necessary to ensure her appearance in court and to ensure the safety of the community.  This order has deprived Ms. Twyman of her liberty, her rights to free speech and association, and has imposed serious, practical burdens on her and her family.  Restricting her rights and imposing these burdens without justification not only violates the Bail Reform Act, it also constitutes excessive bail in violation of the Eighth Amendment.

For these reasons, Ms. Twyman respectfully requests that this motion for modification of certain conditions of her release be granted and the Court issue a superseding release order that does not restrict her rights to have contact with Ms. Stacey Twyman, Mr. Larry Williams, Ms. Courtney Phillips, and Ms. Capri Taylor.

/s/ Roy L. Austin, Jr.
HARRIS, WILTSHIRE & GRANNIS LLP
1919 M Street, N.W., 8th Floor
Tel. (202) 730-1300
raustin@hwglaw.com

*Counsel for Ms. Twyman*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion and Memorandum in Support of Motion for Modification of Certain Conditions of Release has been served via ECF upon counsel for the Government this 11th day of September 2018.

/s/ Roy L. Austin, Jr.
HARRIS, WILTSHIRE & GRANNIS LLP
1919 M Street, N.W., 8th Floor
Tel. (202) 730-1300
raustin@hwglaw.com

*Counsel for Ms. Twyman*